JUDGE SULLIVAN



08 CV 3707

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

ARROWOOD SURPLUS LINES INSURANCE
COMPANY, as Successor in Interest to Landmark
American Insurance Company,

Case No.

APR 1 8 2008

U.S.D.C. S.D. N.Y.

Plaintiff,

-against-

**COMPLAINT FOR SHIERS**
**DECLARATORY RELIEF**

RY MANAGEMENT CO., INC.,

Defendant.

------------------------------------------------------------------X

Plaintiff, Arrowood Surplus Lines Insurance Company, by its attorneys, Rivkin Radler LLP, alleges as follows:

1.    This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201, for the purpose of determining a justiciable controversy between the parties as described more completely herein.

**PARTIES**

2.    Arrowood Surplus Lines Insurance Company ("Arrowood") is and, at all times relevant hereto, was an insurance company, incorporated under the laws of the State of Delaware, with a principal place of business in the State of North Carolina.

3.    Arrowood is the Successor in Interest to Landmark American Insurance Company.

4.    Defendant, RY Management Co., Inc. ("RY"), is and, at all times relevant hereto, was a corporation, incorporated under the laws of the State of New York, with a principal place of business in the State of New York.

## JURISDICTION AND VENUE

5.    Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332.

6.    Arrowood, on the one hand, and RY, on the other, are citizens of different states, within the meaning of 28 U.S.C. § 1332(a), and are interested parties within the meaning of 28 U.S.C. § 2201.

7.    The amount in controversy exceeds $75,000.00, exclusive of interest and costs.

8.    Venue is proper in the Southern District of New York, pursuant to 28 U.S.C. § 1391(a).

## THE LANDMARK POLICY

9.    Landmark American Insurance Company entered into a policy for commercial general liability insurance with first named insured RY, policy no. BMG-01157, incepting January 31, 2003, and expiring January 31, 2004 (the "Landmark Policy"). A true and correct copy of the Landmark Policy is attached to the Complaint as Exhibit "1."

10.    The Landmark Policy provides coverage for "bodily injury" and "property damage" that was caused by an "occurrence" and which occurred during the policy period of the Landmark Policy:

**SECTION I          COVERAGES**

**COVERAGE A      BODILY INJURY AND PROPERTY DAMAGE**

**1.    Insuring Agreement**

a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result…

* * *

b.     This insurance applies to "bodily injury" and "property damage" only if:

(1)     The "bodily injury" or "property damage" is caused by an "occurrence"… and

(2)     The "bodily injury" or "property damage" occurs during the policy period.

Ex. "1", at pp. LANDMARK 8-- LANDMARK 9.

11.     The Landmark Policy includes an endorsement entitled "Scheduled Location Endorsement," which provides:

## SCHEDULED LOCATION ENDORSEMENT
### (Restriction of Coverage)

It is agreed that such insurance as is afforded by this policy applies only to liability arising directly from the ownership, operation, maintenance, management, occupancy or use by the insured of the physical premises scheduled below…

Ex. "1," at pp. LANDMARK 43-- LANDMARK 44.

12.    RY understood that the Landmark Policy provided defense or indemnity coverage only for liability arising out of locations specified in the Landmark Policy and did not provide coverage for liability arising out of any other locations.

13.    The Landmark Policy also includes an endorsement entitled "Designated Operations Coverage Only," which provides:

### DESIGNATED OPERATIONS COVERAGE ONLY
### NOTICE OF SPECIAL RESTRICTION OF COVERAGE
### ENDORSEMENT

\* \* \*

Only certain very specific liability exposures have been covered under this policy...

\* \* \*

I.    Subject to all of the exclusions, terms and conditions of this policy, such insurance as is afforded by this policy applies only to liability arising directly from the ownership, maintenance or use of the following by the Insured or the specific business operations by the Insured as described as follows:

Offices occupied by the Insured -- No coverage for operations or LRO

II.    No insurance is afforded by this policy for liability, directly or indirectly, arising from any exposure to loss described below:

If not stated in I. above.

Ex. "1," at p. LANDMARK 46.

14.    RY understood that the Landmark Policy provided defense or indemnity coverage only for liability arising out of RY's offices in the locations specified in the

Scheduled Location Endorsement and did not provide coverage for liability arising out of

RY's operations or lessor's risks at those locations or at any other locations.

15.    The Landmark Policy includes an endorsement entitled "Pre-Existing

Damage Exclusion," which provides:

## PRE-EXISTING DAMAGE EXCLUSION

This insurance does not apply to:

1.    Any loss or claim for damages related to "bodily injury" or
      "property damage" whether known or unknown:

   a.    Which first occurred prior to the inception date of this
         policy... or

   b.    Which is, or alleged to be, in the process of occurring
         as of the inception date of this policy...

2.    Any loss or claim for damages arising out of or related to
      "bodily injury" or "property damage", whether known or
      unknown, which is in the process of settlement, adjustment or
      "suit" as of the inception date of this policy...

      We will have no duty to defend any insured against any loss,
      claim, "suit" or other proceeding alleging damages arising out
      of or related to "bodily injury" or "property damage" to
      which this endorsement applies.

Ex. "1," at p. LANDMARK 69.

16.    RY understood that the Landmark Policy does not provide defense or

indemnity coverage for any loss or claim for damages related to "bodily injury" which

first occurred before the inception of the Landmark Policy or which was or alleged to be

in the process of occurring as of the inception of the Landmark Policy.

17.    RY understood that the Landmark Policy does not provide defense or indemnity coverage for any loss or claim for damages related to "bodily injury" which is in the process of "suit" as of the inception of the Landmark Policy.

## FACTS

18.    RY has been named as a defendant in numerous lawsuits alleging respiratory and inhalation injuries to workers who performed clean-up work at areas in and around lower Manhattan after the terrorist attack upon the World Trade Center on September 11, 2001 (the "respiratory injury suits").

19.    The original complaints in the respiratory injury suits, filed in or removed to the United States District Court for the Southern District of New York, generally alleged that RY owned, leased, maintained, operated and controlled certain premises in lower Manhattan.

20.    The District Judge presiding over the respiratory injury suits, Alvin K. Hellerstein, directed that each plaintiff that had commenced a respiratory injury suit file a "short-form complaint" that alleges with specificity, among other things, the exact locations at which the plaintiff worked, the dates of the plaintiff's employment at each specified location, and the defendants responsible for the injuries the plaintiff suffered as a result of its employment at each specified location.

21.    The "short-form complaints" filed in the respiratory injury suits that name RY as a defendant assert that RY owned the premises located at 250 South End Avenue (Hudson View East) and that RY's liability arises primarily out of its ownership,

maintenance or use of the premises located at 250 South End Avenue (Hudson View East).

22.    250 South End Avenue (Hudson View East) is not a location identified on the Schedule to the Scheduled Location Endorsement of the Landmark Policy.

23.    The "short-form complaints" in the respiratory injury suits that name RY as a defendant assert that RY's liability for the plaintiffs' injuries arose out of RY's ownership, maintenance or use of locations that are not identified on the Schedule to the Scheduled Location Endorsement of the Landmark Policy.

24.    In the respiratory injury suits, RY is sued for liability arising out of a location or locations that are not specified on the Scheduled Location Endorsement of the Landmark Policy.

25.    In the respiratory injury suits, RY is sued for liability arising out of its operations or lessor's risk.

26.    Arrowood initially agreed to defend RY against the respiratory injury suits subject to an express reservation of Arrowood's rights under the Landmark Policy and, since that time, has paid 100% of the attorney's fees and costs to defend RY against the respiratory injury suits.

27.    Arrowood has since disclaimed defense and indemnity coverage under the Landmark Policy to RY for the respiratory injury suits because the "short-form complaints" filed in the respiratory injury suits specify that RY's alleged liability does not arise out of a location identified in the Schedule to the Scheduled Location Endorsement.

## DECLARATORY RELIEF IS APPROPRIATE

28.     An actual controversy has arisen and exists between Arrowood, on the one hand, and RY, on the other, relating to the legal rights and duties of the parties under the Landmark Policy with respect to the claims made in the respiratory injury suits.

29.     RY contends that the respiratory injury suits allege injuries or damages that fall within Arrowood's duties to defend and indemnify under the Landmark Policy. Arrowood contends that, under the Landmark Policy, it does not have, nor ever had, a duty to defend or indemnify RY against the claims made in the respiratory injury suits.

30.     Based upon the allegations in the "short-form complaints" filed by the plaintiffs in the respiratory injury suits, RY's alleged liability arises out of a location that is not identified on the Schedule to the Scheduled Location endorsement of the Landmark Policy.

31.     Arrowood is entitled to a declaration that it does not have a duty under the Landmark Policy to defend or indemnify RY against the respiratory injury suits, and that it can withdraw from defending RY against the respiratory injury suits.

32.     Arrowood does not have, nor ever had, a duty to defend or indemnify RY against the claims made in the respiratory injury suits, for the following reasons:

      (a)    The respiratory injury suits do not seek damages because of "bodily injury" that was caused by an "occurrence" and which occurred during the policy period of the Landmark Policy; or

      (b)    The respiratory injury suits do not seek damages because of "bodily injury" arising directly from the ownership, operation, maintenance, management, occupancy or use by the insured of the physical premises scheduled on the Scheduled Location Endorsement in the Landmark Policy; or

(c)     The respiratory injury suits do not seek damages because of "bodily injury" arising directly from the ownership, maintenance or use of offices occupied by RY; or

(d)     There is no insurance afforded by the Landmark Policy for liability, directly or indirectly, arising from RY's operations or lessor's risks; or

(e)     There is no insurance afforded by the Landmark Policy for "bodily injury" which first occurred prior to the inception date of the Landmark Policy or which is, or alleged to be, in the process of occurring as of the inception date of the Landmark Policy; or

(f)     There is no insurance afforded by the Landmark Policy for "bodily injury", whether known or unknown, which is in the process of settlement, adjustment or "suit" as of the inception date of the Landmark Policy; or

(g)     The damages or injuries alleged in the respiratory injury suits are excluded from coverage under the Landmark Policy based upon the operation of the pollution exclusion to the Landmark Policy; or

(h)     The damages or injuries alleged in the respiratory injury suits are excluded from coverage under the Landmark Policy based upon the operation of the asbestos exclusion to the Landmark Policy; or

(i)     The damages or injuries alleged in the respiratory injury suits are excluded from coverage under the Landmark Policy based upon the operation of the expected or intended injury exclusion to the Landmark Policy; or

(j)     The liability of RY at issue in the respiratory injury suits is otherwise outside the coverage provided by the Landmark Policy, or is otherwise excluded from coverage by the Landmark Policy.

33.     Declaratory relief is both necessary and proper to determine the legal rights and duties that exist between the parties under the Landmark Policy, pursuant to 28 U.S.C. § 2201.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

34.    Arrowood realleges paragraphs "1" through "33" as though fully set forth herein.

35.    Arrowood agreed to defend RY against the respiratory injury suits and has paid 100% of the attorney's fees and costs to defend RY against the respiratory injury suits.

36.    However, based upon the "short-form complaints" recently filed in the respiratory injury suits, Arrowood does not have a duty under the Landmark Policy to defend RY against the respiratory injury suits.

37.    Since Arrowood does not have a duty under the Landmark Policy to defend RY against the respiratory injury suits, it can withdraw from defending RY against the respiratory injury suits.

### SECOND CAUSE OF ACTION

38.    Arrowood realleges paragraphs "1" through "37" as though fully set forth herein.

39.    Arrowood does not have a duty under the Landmark Policy to indemnify RY against the respiratory injury suits.

## THIRD CAUSE OF ACTION

40.    Arrowood realleges paragraphs "1" through "39" as though fully set forth herein.

41.    In the event the Court determines that Arrowood does not owe a duty under the Landmark Policy to defend RY against the respiratory injury suits or for some but not all claims in the respiratory injury suits, then Arrowood is entitled to reimbursement of those attorney's fees and costs expended to defend RY against the respiratory injury suits or those claims for relief that are not within the coverage of the Landmark Policy.

## FOURTH CAUSE OF ACTION

42.    Arrowood realleges paragraphs "1" through "41" as though fully set forth herein.

43.    In the event the Court determines that Arrowood owes a duty under the Landmark policy to defend RY against the respiratory injury suits, then such duty to defend is limited to paying those necessary and reasonable costs expended for that claim or those claims for relief that are within the coverage of the Landmark Policy.

## FIFTH CAUSE OF ACTION

44.    Arrowood realleges paragraphs "1" through "37" as though fully set forth herein.

45.    In the event the Court determines that Arrowood owes a duty under the Landmark Policy to indemnify RY for the respiratory injury suits, then such duty to indemnify is limited to paying the damages awarded against RY allocable to that claim or those claims for relief that are within the coverage of the Landmark Policy.

- 11 -

WHEREFORE, Arrowood prays that judgment be entered against RY:

(a)     On its First Cause of Action, declaring that Arrowood does not have an obligation under the Landmark Policy to defend RY against the respiratory injury suits and can withdraw from defending RY against the respiratory injury suits;

(b)     On its Second Cause of Action, declaring that Arrowood does not have an obligation under the Landmark Policy to indemnify RY against the respiratory injury suits;

(c)     On its Third Cause of Action, reimbursing Arrowood for those attorney's fees and costs incurred to defend those claims asserted in the respiratory injury suits that are not within the coverage of the Landmark Policy;

(d)     On its Fourth Cause of Action, apportioning Arrowood's defense obligations according to the claims for relief, if any, that are within the coverage of the Landmark Policy;

(e)     On its Fifth Cause of Action, apportioning Arrowood's indemnity obligations according to the claims for relief, if any, that are within the coverage of the Landmark Policy;

(f)     Awarding Arrowood the costs it has incurred in this action;

(g)     Awarding Arrowood such other and further relief as this Court deems just and proper.

Dated:    Uniondale, New York
          April 17, 2008

Respectfully submitted,

By: _____

Joseph K. Poe (JP 1960)
Frank M. Misiti (FM 6610)
Rivkin Radler LLP
926 RexCorp Plaza
Uniondale, New York 11556-0926
(516) 357-3000
(516) 357-3333 (facsimile)

Attorneys for Plaintiff
ARROWOOD SURPLUS LINES INSURANCE
COMPANY (as Successor in Interest to Landmark
American Insurance Company)

2124446 v1

**EXHIBIT 1**

[ ] Royal Surplus Lines Insurance Company
[x] Landmark American Insurance Company

Coverage is provided by the company designated by an "X" next to the company listed above. A Stock Insurance Company and a member of Royal & SunAlliance.

Home Office:    9300 Arrowpoint Blvd.
                Charlotte, NC  28273
                (704) 522-2000

RENEWAL OF   N/A

POLICY NO.   BMG-001157

## DECLARATIONS

NAMED INSURED:          – R Y Management Co., Inc., Quaker Ridge Computer Corp., Travis Brokerage Corp.

MAILING ADDRESS:        1619 Third Avenue, New York, NY  10128

POLICY PERIOD: From   01/31/2003   to   01/31/2004
at                          12:01 A.M. Standard Time at your mailing address shown above.

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

### LIMITS OF INSURANCE

| | |
|---|---|
| GENERAL AGGREGATE (other than products/comp. ops) | $ 2,000,000 |
| PRODUCTS-COMPLETED OPERATIONS AGGREGATE LIMIT | $ Excluded |
| EMPLOYEE BENEFITS LIABILITY AGGREGATE | $ Not Covered |
| PERSONAL & ADVERTISING INJURY LIMIT | $ 1,000,000 |
| EACH OCCURRENCE LIMIT | $ 1,000,000 |
| FIRE DAMAGE LIMIT | $ 50,000  ANY ONE FIRE |
| MEDICAL EXPENSE LIMIT | $ Excluded  ANY ONE PERSON |

DEDUCTIBLE: $5,000 per claim          SELF INSURED RETENTION (SIR): $0

Coverage A of this insurance does not apply to "bodily injury" or "property damage" which occurs before the Retroactive Date, if any, shown below:
Retroactive Date:  None          (Enter Date or "None" if no Retroactive Date applies)

Form of Business:
[] Individual                         [] Partnership

[] Joint Venture                      [x] Organization (Other than Partnership or Joint Venture)

Business Description:   See Designated Operations Endorsement AG 0506 0702
Location of All Premises You Own, Rent or Occupy:   See Scheduled Locations Endorsement AG 0509

| CLASSIFICATION | CODE NO. | PREMIUM BASIS | RATE | MINIMUM & DEPOSIT PREMIUM |
|---|---|---|---|---|
| Building or Premises | 61224 | N/A | Flat | $20,000 |

ENDORSEMENTS ATTACHED TO THIS POLICY: IL 00 21 11 85-Broad Form Nuclear Exclusion  See Attached Schedule of Forms and Endorsements

COUNTERSIGNED _____ BY: _____

DATE

AG 2518 0702

**This Insurance Is Issued Pursuant to the New Jersey Surplus Lines Law.**

THIS INSURANCE POLICY IS WRITTEN BY AN INSURER NOT LICENSED BY THE STATE OF NEW YORK, NOT SUBJECT TO ITS SUPERVISION AND NOT PROTECTED, IN THE EVENT OF INSOLVENCY OF THE INSURER, BY THE NEW YORK STATE SECURITY FUNDS. THE POLICY MAY NOT BE SUBJECT TO ALL OF THE REGULATIONS OF THE INSURANCE DEPARTMENT PERTAINING TO POLICY FORM.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

## CHANGES IN POLICY

This endorsement changes the policy effective on the date indicated below.

| Policy Number: BMG-001157 | Endorsement Number: 3 |
|---|---|
| Endorsement Effective: 01/01/03 | Company: Landmark American Insurance Company |
| Named Insured: RY Management Co., Inc. | Countersigned By |
| Agency Code: 91-3237 | (Authorized Representative) |

In consideration of an additional premium of $400.00, it is hereby understood and agreed that the following location as found on the Scheduled Locations Endorsement AG 0509 0702 is amended to include 5,200 square feet of additional Lobby Office Space.

1. Premises Located:     1619 3rd Avenue, New York, NY 10128

AG 0730 0702

LANDMARK 002

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

**CHANGES IN POLICY**

This endorsement changes the policy effective on the date indicated below.

| | |
|---|---|
| Policy Number: BMG-001157 | Endorsement Number: 2 |
| Endorsement Effective:  3/21/03 | Company: Landmark American Insurance Company |
| Named Insured: RY Management Co., Inc. | Countersigned By: |
| Agency Code: 91-3237 | (Authorized Representative) |

In consideration of an additional premium of $500.00, it is hereby understood and agreed that the following Additional Insured – Managers or Lessors of Premises Endorsement CG 20 11 10 96 is now being made a part of the policy.

AG 0730 0702

LANDMARK 003

Policy Number: BMG-001157

CG 20 11 10 96

## ADDITIONAL INSURED - MANAGERS OR LESSORS OF PREMISES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

1.   Designation of Premises (Part Leased to You):

2.   **Name of Person or Organization (Additional Insured):** Yorkville Towers Associates, LLC.; Lehman Brothers Holdings Inc. d/b/a Lehman Capital, a division of Lehman Brothers Holdings, Inc.; The Ruppert Yorkville Towers Condominium; The Frederick DeMatteis Family Limited Partnership; DeMatteis Development Corp.

3.   **Additional Premium:** $500.00

(If not entry appears above, the information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**WHO IS AN INSURED** (Section II) is amended to include as an insured the person or organization shown in the Schedule but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule and subject to the following additional exclusions:

This insurance does not apply to:

1.   Any "occurrence" which takes place after you cease to be a tenant in that premises.

2.   Structure alterations, new construction or demolition operations performed by or on behalf of the person or organization shown in the Schedule.

LANDMARK  004

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CHANGES IN POLICY

This endorsement changes the policy effective on the date indicated below.

| | |
|---|---|
| Policy Number:  BMG-001157 | Endorsement Number: 1 |
| Endorsement Effective: 01/31/2003 | Company:  Landmark American Insurance Company |
| Named Insured: RY Management Co., Inc. | Countersigned By:_ |
| Agency Code: 91-3237 | (Authorized Representative) |

In consideration of an additional premium of $250.00, it is hereby understood and agreed that the attached Endorsement, Additional Insured - Designated Person or Organization, form number CG 20 26 11 85 is made part of this policy.

AG 0730 0702

LANDMARK  005

POLICY NUMBER:                                          **COMMERCIAL GENERAL LIABILITY**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

**SCHEDULE**

**Name of Person or Organization:**

Yorkville Towers Associates Limited Partnership
1601-1641 Third Avenue
New York, NY 10128

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule as an insured but only with respect to liability arising out of your operations or premises owned by or rented to you.

**CG 20 26 11 85**    Copyright, Insurance Services Office, Inc., 1984    **Page 1 of**

INSURED: R Y Management Co., Inc., Quaker Ridge Computer Corp., Travis Brokerage Corp.

POLICY NUMBER: BMG-001157

## SCHEDULE OF FORMS AND ENDORSEMENTS

| | |
|---|---|
| Commercial General Liability Coverage Form | CG 00 01 10 01 |
| Nuclear Energy Liability Exclusion | IL 00 21 04 98 |
| Common Policy Conditions | GE 0401-0 1098 |
| Deductible Liability Endorsement | AG 0504 0702 |
| Named Insured & Insuring Company Descriptive Endorsement | AG 0508 0702 |
| Professional Liability/Errors & Omissions Exclusion | AG 0526 0702 |
| Scheduled Locations Endorsement | AG 0509 0702 |
| Fine, Penalties & Punitive Damages Exclusion | AG 0517 0702 |
| Designated Operations Coverage | AG 0506 0702 |
| Independent Contractors Restriction | AG 0516 0702 |
| Insured's Warranty of Application & Loss Information | AG 0518 0702 |
| Minimum Premium-Absolute Minimum Premium | AG 0519 0702 |
| Other Exclusions | AG 0520 0702 |
| Subsidence Exclusion | AG 0524 0702 |
| War or Terrorism Exclusion | CG 2169 0102 |
| Additional Insured - Mortgagee, Assignee or Receiver (Blanket) | CG 20 18 11 85 |
| Mold and Fungi Exclusion | AG 0544 0702 |
| Radon Exclusion Clause | AG 0625 0702 |
| Lead Paint Exclusion | AG 0523 0702 |
| Asbestos Exclusion | AG 0514 0702 |
| Absolute Pollution and Contamination Exclusion | AG 0659 0702 |
| Bodily Injury to Employees | AG 0528 0702 |
| Employee Benefits Exclusion | AG 0515 0702 |
| Non-Money Damages Exclusion | AG 0715 0702 |
| Residential Construction Exclusion | AG 0522 0702 |
| Assault & Battery Exclusion | AG 0532 0702 |
| Products/Completed Ops. Exclusion – | CG 2104 1185 |
| Personal & Advertising Injury Exclusion | CG 2138 1185 |
| Pre-Existing Damage Exclusion | AG 0521 0702 |
| Exclusion-Coverage C-Medical Payments | CG 21 35 10 01 |
| Service of Suit | OI 1200-0 (3-99) |
| Calculation of Premium | IL 01 85 04 98 |
| Amendatory Endorsement | AG 0730 0702 |

AI1202 06/99

LANDMARK 007

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under **SECTION II - WHO IS AN INSURED**.

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION V - DEFINITIONS**.

## SECTION I - COVERAGES

## COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.  **Insuring Agreement**

a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

    (1)  The amount we will pay for damages if limited as described in **SECTION III - LIMITS OF INSURANCE**; and

    (2)  Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **SUPPLEMENTARY PAYMENTS - COVERAGES A and B**.

LANDMARK 008

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph 1. of **SECTION II - WHO IS AN INSURED** and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of SECTION II - WHO IS AN INSURED or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of **SECTION II - WHO IS AN INSURED** or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions**

This insurance does not apply to:

a. **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

LANDMARK  009

b.  **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

(1)  That the insured would have in the absence of the contract or agreement; or

(2)  Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.  Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

   (a)  Liability to such party for, or for the cost of that party's defense has also been assumed in the same "insured contract";

   (b)  Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

c.  **Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1)  Causing or contributing to the intoxication or any person;

(2)  The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3)  Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

d.  **Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

e.  **Employer's Liability**

"Bodily injury" to:

(1)  An "employee" of the insured arising out of and in the course of:

LANDMARK  010

    (a)     Employment by the insured; or

    (b)     Performing duties related to the conduct of the insured's business; or

(2)    The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1)    Whether the insured may be liable as an employer or in any other capacity; and

(2)    To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f.  Pollution**

(1)    "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

    (a)     At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

          (i)    "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

          (ii)   "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

          (iii)  "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

    (b)     At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

    (c)     Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

          (i)    Any insured; or

LANDMARK 011

    **(ii)**        Any person or organization for whom you may be legally responsible; or

**(d)**    At or from any premises, site or location on which any insured or any contractors subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

    **(i)**        "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

    **(ii)**       "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

    **(iii)**      "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)**    At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)**    Any loss, cost or expense arising out of any:

    **(a)**    Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

    **(b)**    Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

LANDMARK 012

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

g.  Aircraft, Auto or Watercraft

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured.  Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1)    A watercraft while ashore on premises you own or rent;

(2)    A watercraft you do not own that is:

   (a)    Less than 26 feet long; and

   (b)    Not being used to carry persons or property for a charge;

(3)    Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4)    Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5)    "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

h.  Mobile Equipment

"Bodily injury" or "property damage" arising out of:

(1)    The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2)    The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

i.  War

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war.  War includes civil war, insurrection, rebellion or revolution.

LANDMARK 013

This exclusion applies only to liability assumed under a contract or agreement.

**j.    Damage To Property**

"Property damage" to:

(1)    Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2)    Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3)    Property loaned to you;

(4)    Personal property in the care, custody or control of the insured;

(5)    That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6)    That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in **SECTION III - LIMITS OF INSURANCE.**

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k.    Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l.    Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

LANDMARK 014

m.  **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1)  A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2)  A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n.  **Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1)  "Your product";

(2)  "Your work"; or

(3)  "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

o.  **Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in SECTION III - LIMITS OF INSURANCE.

# COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY

1.  **Insuring Agreement**

a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

LANDMARK 015

(1)　The amount we will pay for damages is limited as described in **SECTION III - LIMITS OF INSURANCE**; and

(2)　Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

b.　This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

2.　Exclusions

This insurance does not apply to:

a.　**Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

b.　**Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

c.　**Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

d.　**Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

e.　**Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

f.　**Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

LANDMARK 016

**g.** **Quality Or Performance Of Goods - Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h.** **Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i.** **Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j.** **Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business if:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of websites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k.** **Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l.** **Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m.** **Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

LANDMARK 017

n.   **Pollution-Related**

Any loss, cost or expense arising out of any:

(1)   Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2)   Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

# COVERAGE C. MEDICAL PAYMENTS

1.   **Insuring Agreement**

a.   We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1)   On premises you own or rent;

(2)   On ways next to premises you own or rent; or

(3)   Because of your operations;

provided that:

(1)   The accident takes place in the "coverage territory" and during the policy period;

(2)   The expenses are incurred and reported to us within one year of the date of the accident; and

(3)   The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b.   We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1)   First aid administered at the time of an accident;

(2)   Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3).   Necessary ambulance, hospital, professional nursing and funeral services.

2.   **Exclusions**

We will not pay expenses for "bodily injury":

LANDMARK 018

**a.  Any Insured**

To any insured, except "volunteer workers".

**b.  Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c.  Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d.  Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e.  Athletics Activities**

To a person injured while taking part in athletics.

**f.  Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g.  Coverage A Exclusions**

Excluded under Coverage A.

**h.  War**

Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## SUPPLEMENTARY PAYMENTS - COVERAGES A AND B

1.  We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

   **a.**  All expenses we incur.

   **b.**  Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising our of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

   **c.**  The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

LANDMARK 019

d.  All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to S250 a day because of time off from work.

e.  All costs taxed against the insured in the "suit".

f.  Prejudgment interest awarded against the insured on that part of the judgment we pay.  If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g.  All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2.  If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a.  The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b.  This insurance applies to such liability assumed by the insured;

c.  The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d.  The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e.  The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f.  The indemnitee:

(1)  Agrees in writing to:

(a)  Cooperate with us in the investigation, settlement or defense of the "suit";

(b)  Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c)  Notify any other insurer whose coverage is available to the indemnitee; and

(d)  Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

LANDMARK 020

(2)  Provides us with written authorization to:

    (a)  Obtain records and other information related to the "suit"; and

    (b)  Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of **SECTION I - COVERAGE A -** Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

**a.**  We have used up the applicable limit of insurance in the payment of judgments or settlements; or

**b.**  The conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II - WHO IS AN INSURED

1.  If you are designated in the Declarations as:

    **a.**  An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

    **b.**  A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

    **c.**  A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

    **d.**  An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

    **e.**  A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2.  Each of the following is also an insured:

    **a.**  Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your

LANDMARK 021

managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insured for:

(1)   "Bodily injury" or "personal and advertising injury":

    (a)   To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

    (b)   To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

    (c)   For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

    (d)   Arising out of his or her providing or failing to provide professional health care services.

(2)   "Property damage" to property:

    (a)   Owned, occupied or used by,

    (b)   Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or members (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b.   Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

c.   Any person or organization having proper temporary custody of your property if you die, but only:

(1)   With respect to liability arising out of the maintenance or use of that property; and

(2)   Until your legal representative has been appointed.

d.   Your legal representative if you die, but only with respect to duties as such.   That representative will have all your rights and duties under this Coverage Part.

3.   With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and

LANDMARK 022

only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

a.   "Bodily injury" to a co-"employee" of the person driving the equipment; or

b.   "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4.   Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a.   Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b.   Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c.   Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III - LIMITS OF INSURANCE

1.   The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a.   Insureds;

b.   Claims made or "suits" brought; or

c.   Persons or organizations making claims or bringing "suits".

2.   The General Aggregate Limit is the mst we will pay for the sum of:

a.   Medical expenses under Coverage C;

b.   Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

c.   Damages under Coverage B.

3.   The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

LANDMARK 023

4.    Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5.    Subject to **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

    **a.**    Damages under Coverage **A**; and

    **b.**    Medical expenses under Coverage **C**

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6.    Subject to **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7.    Subject to **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS

1.    **Bankruptcy**

    Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2.    **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

    **a.**    You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

        **(1)**    How, when and where the "occurrence" or offense took place;

        **(2)**    The names and addresses of any injured persons and witnesses; and

        **(3)**    The nature and location of any injury or damage arising out of the "occurrence" or offense.

    **b.**    If the claim is made or "suit" is brought against any insured, you must:

LANDMARK 024

(1)    Immediately record the specifics of the claim or "suit" and the date received; and

(2)    Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c.    You and any other involved insured must:

(1)    Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2)    Authorize us to obtain records and other information;

(3)    Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4)    Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d.    No insured will, except at the insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3.    **Legal Action Against Us**

No person or organization has a right under this Coverage Part:

a.    To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b.    To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4.    **Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a.    **Primary Insurance**

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

LANDMARK 025

b.  **Excess Insurance**

This insurance is excess over:

   (1)  Any of the other insurance, whether primary, excess, contingent or on any other basis:

      (a)  That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

      (b)  That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

      (c)  That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

      (d)  If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of **SECTION I - COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**.

   (2)  Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages A or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If not other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

   (1)  The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

   (2)  The total of all deductible and self-insured amount under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

c.  **Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

LANDMARK 026

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits.  Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

5.    **Premium Audit**

   a.  · We will compute all premiums for this Coverage Part in accordance with our rules and rates.

   b.    Premium shown in this Coverage Part as advance premium is a deposit premium only.  At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured.  The due date for audit and retrospective premiums is the date shown as the due date on the bill.  If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

   c.    The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

6.    **Representations**

   By accepting this policy, you agree:

   a.    The statements in the Declarations are accurate and complete;

   b.    Those statements are based upon representations you made to us; and

   c.    We have issued this policy in reliance upon your representations.

7.    **Separation Of Insureds**

   Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

   a.    As if each Named Insured were the only Named Insured; and

   b.    Separately to each insured against whom claim is made or "suit" is brought.

8.    **Transfer Of Rights Of Recovery Against Others To Us**

   If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us.  The insured must do nothing after loss to impair them.  At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

9.    **When We Do Not Renew**

   If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

LANDMARK 027

If notice is mailed, proof of mailing will be sufficient proof of notice.

# SECTION V - DEFINITIONS

1.    "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

    a.    Notices that are published include material placed on the Internet or on similar electronic means of communication; and

    b.    Regarding web-sites, only that part of a website that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2.    "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

3.    "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4.    "Coverage territory" means:

    a.    The United States of America (including its territories and possessions), Puerto Rico and Canada;

    b.    International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above; or

    c.    All other parts of the world if the injury or damage arises out of:

        (1)    Goods or products made or sold by you in the territory described in a. above;

        (2)    The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; or

        (3)    "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5.    "Employee" includes a "leased worker".

6.    "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

LANDMARK 028

7.    "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8.    "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

    a.    It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    b.    You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

    a.    The repair, replacement, adjustment or removal of "your product" or "your work"; or

    b.    Your fulfilling the terms of the contract or agreement.

9.    "Insured contract" means

    a.    A contract for a lease of premises.  However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

    b.    A sidetrack agreement;

    c.    Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

    d.    An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

    e.    An elevator maintenance agreement;

    f.    That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization.  Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

    Paragraph f. does not include that part of any contract or agreement:

      (1)    That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

      (2)    That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

LANDMARK 029

(a)    Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b)    Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3)    Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

10.    "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11.    "Loading or unloading" means the handling of property:

a.    After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b.    While it is in or on an aircraft, watercraft or "auto"; or

c.    While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12.    "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a.    Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b.    Vehicles maintained for use solely on or next to premises you own or rent;

c.    Vehicles that travel on crawler treads;

d.    Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1)    Power cranes, shovels, loaders, diggers or drills; or

(2)    Road construction or resurfacing equipment such as graders, scrapers or rollers;

e.    Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

LANDMARK 030

     **(1)**    Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

     **(2)**    Cherry pickers and similar devices used to raise or lower workers;

  **f.**    Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

     However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

     **(1)**    Equipment designed primarily for:

        **(a)**    Snow removal;

        **(b)**    Road maintenance, but not construction or resurfacing; or

        **(c)**    Street cleaning;

     **(2)**    Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

     **(3)**    Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**13.**    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.**    "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

  **a.**    False arrest, detention or imprisonment;

  **b.**    Malicious prosecution;

  **c.**    The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

  **d.**    Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

  **e.**    Oral or written publication, in any manner, of material that violates a person's right of privacy;

  **f.**    The use of another's advertising idea in your "advertisement"; or

  **g.**    Infringing upon another's copyright, trade dress or slogan in your "advertisement".

LANDMARK  031

15.    "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16.    "Products-completed operations hazard":

    **a.**  Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

        **(1)**  Products that are still in your physical possession; or

        **(2)**  Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

            **(a)**  When all of the work called for in your contract has been completed.

            **(b)**  When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

            **(c)**  When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

        Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

    **b.**  Does not include "bodily injury" or "property damage" arising out of:

        **(1)**  The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

        **(2)**  The existence of tools, uninstalled equipment or abandoned or unused materials; or

        **(3)**  Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17.    "Property damage" means:

    **a.**  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.**  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

    For the purposes of this insurance, electronic data is not tangible property.

LANDMARK 032

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18.    "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

    **a.**    An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

    **b.**    Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19.    "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20.    "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed by you.

21.    "Your product":

    **a.**    Means:

        **(1)**    Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

            **(a)**    You;

            **(b)**    Other trading under your name; or

            **(c)**    A person or organization whose business or assets you have acquired; and

        **(2)**    Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    **b.**    Includes

        **(1)**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

        **(2)**    The providing of or failure to provide warnings or instructions.

    **c.**    Does not include vending machines or other property rented to or located for the use of others but not sold.

LANDMARK  033

22.     "Your work":

    a.     Means:

        (1)     Work or operations performed by you or on your behalf; and

        (2)     Materials, parts or equipment furnished in connection with such work or operations.

    b.     Includes

        (1)     Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

        (2)     The providing of or failure to provide warnings or instructions.

LANDMARK 034

**THIS ENDORSEMENT ̗ANGES THE POLICY. PLEASE ᵣ ̗.D IT CAREFULLY**

IL 00 21 04 98

**NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT (Broad Form)**

This endorsement modifies insurance provided under the following:

> BUSINESSOWNERS POLICY
> COMMERCIAL AUTO COVERAGE PART
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
> FARM COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
> LIQUOR LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART
> OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
> PROFESSIONAL LIABILITY COVERAGE PART
> RAILROAD PROTECTIVE LIABILITY COVERAGE PART
> SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT
> OF TRANSPORTATION
> UNDERGROUND STORAGE TANK POLICY

1. This insurance does not apply:

   A. Under any Liability coverage to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United Sates of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured"; or

LANDMARK 035

right, Insurance Services Office, Inc.. 1997

(3)    The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2.    As used in this endorsement:

"Hazardous properties" include radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "Special nuclear material" or "by-product material";

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material " content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a)   Any "nuclear reactor";

(b)   Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling. processing or packing "waste";

(c)   Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d)   Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

Copyright, Insurance Services Office, Inc:, 1997

LANDMARK 036

GE 0401-0 (10-98)

## COMMON POLICY CONDITIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### A. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

### B. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

### C. INSPECTIONS AND SURVEYS

We have the right but are not obligated to:

1. Make inspections and surveys at any time;

2. Give you reports on the conditions we find; and

3. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

1. Are safe or healthful; or

2. Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

### D. PREMIUMS

The first Named Insured shown in the Declarations:

Page 1 of 2

LANDMARK 037

1.   Is responsible for the ⸴ ⸴ment of all premiums; and

   2.   Will be the payee for any return premiums we pay.

E.   TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Page 2 of 2

Copyright, Insurance Services Office, Ins. 1982, 1983

LANDMARK  038

POLICY NUMBER: BMG-001157

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## DEDUCTIBLE LIABILITY INSURANCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
PRODUCTS/COMPLETED OPERATION LIABILITY COVERAGE FORM

### SCHEDULE

| DEDUCTIBLE AMOUNT AND COVERAGE | | DEDUCTIBLE BASIS |
|---|---|---|
| $ N/A | Bodily Injury Liability | (x) per claim |
| $ N/A | Personal Injury and Advertising Injury Liability | (-) per occurrence |
| $ N/A | Property Damage Liability | |
| $ 5,000 | Bodily Injury and Property Damage Liability combined | Applicable to the sum of damages, Supplementary Payments and defense costs. |
| $ N/A | Bodily Injury, Personal Injury, Advertising Injury and Property Damage Liability combined | |

**APPLICATION OF ENDORSEMENT** (Enter below any limitations on the application of this endorsement. If no limitation is entered, the deductibles apply to damages for all "bodily injury," "personal injury," "advertising injury," and "property damage," however caused):

1. Our obligation under Bodily Injury Liability, Personal Injury Liability, Advertising Injury Liability and Property Damage Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages.

2. The deductible applies for the deductible amount and coverage option and on the deductible basis indicated in the Schedule above. The deductible amount stated in the schedule above applies as follows:

   a. **PER CLAIM BASIS** - If the deductible amount indicated in the schedule is on a "per claim" basis, that deductible applies as follows:

      (1) Under the Bodily Injury Liability, Personal Injury and Advertising Injury Liability or Property Damage Liability Coverage, respectively:

         (a) To the sum of damages, supplementary payments and "defense costs" because of "bodily injury" sustained by any one person;

         (b) To the sum of damages, supplementary payments and "defense costs" because of "personal injury" and "advertising injury" sustained by any one person; or

         (c) To the sum of damages, supplementary payments and "defense costs" because of "property damage" sustained by any one person;

      (2) Under Bodily Injury and/or Property Damage Liability Coverage combined to the sum of damages, supplementary payments and "defense costs" because of "bodily injury" and "property damage" sustained by any one person; or

\G 0504 0702

Page 1 of 2

LANDMARK 039

(3) Under Bodily Injury, Personal Injury, Advertising Injury and/or Property Damage Liability Coverage combined to the sum of damages, supplementary payments and "defense costs" because of "bodily injury", "personal injury", "advertising injury" and "property damage" sustained by any one person

as a result of any one "occurrence" or offense.

If damages are claimed for care, loss of services or death resulting at any time from "bodily injury", a separate deductible amount will be applied to each person making a claim for such damages.

With respect to "personal injury", "advertising injury" and "property damage", person includes organization.

b. **PER OCCURRENCE BASIS** - If deductible amount indicated in the schedule is on a per "occurrence" basis, that deductible applies as follows:

(1) Under the Bodily Injury Liability, Personal Injury and Advertising Injury Liability or Property Damage Liability Coverage, respectively:

(a) To the sum of damages, supplementary payments and "defense costs" because of "bodily injury";

(b) To the sum of damages, supplementary payments and "defense costs" because of "personal injury" and "advertising injury"; or

(c) To the sum of damages, supplementary payments and "defense costs" because of "property damage";

(2) Under Bodily Injury and/or Property Damage Liability Coverage combined, to the sum of damages, supplementary payments and "defense costs" because of all "bodily injury" and "property damage"; or

(3) Under Bodily Injury, Personal Injury, Advertising Injury and/or Property Damage Liability Coverage combined, to the sum of damages, supplementary payments and "defense costs" because of "bodily injury", "personal injury", "advertising injury" and "property damage"

as a result of any one "occurrence" or offense, regardless of the number of persons or organizations who sustain damages because of that "occurrence" or offense.

(4) The terms of this insurance, including those with respect to:

(a) Our right and duty to defend any "suits" seeking those damages; and

(b) Your duties in the event of an "occurrence", offense, claim or "suit"

apply irrespective of the application of the deductible amount.

(5) We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount that has been paid by us.

(6) The deductible applies whether or not a payment for damages is made.

(7) "Defense costs" mean all expenses incurred in the investigation, defense and settlement of any claim or "suit" under this policy including attorneys fees, court reporter fees, charges for independent medical examinations and expert witnesses, provided such claim expense is incurred by us or with our prior written permission. "Defense costs" will not include salaried employees, counsel on retainer and office expense of either you or us.

AG 0504 0702

Page 2 of 2

LANDMARK 040

# ENDORSEMENT

This Endorsement effective  01/31/2003(12:01 a.m. standard time)
forms a part of Policy   # BMG-001157                                        By:  Landmark American Insurance Company

Issued To: R Y Management Co., Inc., Quaker Ridge Computer Corp., Travis Brokerage Corp.


### NAMED INSURED AND INSURING COMPANY DESCRIPTIVE ENDORSEMENT

Throughout this policy, as well as any coverage parts and endorsements attached hereto, the words "you",
"your" or "Named Insured" refer to the Named Insured shown in the Declarations.  The words "we", "us",
"our", "the Company", "the Underwriter" or "Insurer" refer to the company providing this insurance.


All other terms and conditions of this policy remain unchanged.


AG 0508 0702                                                                                          Page 1 of 1

LANDMARK 041

# ENDORSEMENT

This Endorsement, effective 1/31/2003  (12:01 a.m. standard time),
forms a part of Policy # BMG-001157                                    By: Landmark American Insurance Company

Issued to: RY Management Co., Inc.; Quaker Ridge Computer Corp.; Travis Brokerage Corp.

### PROFESSIONAL LIABILITY/ERRORS AND OMISSIONS EXCLUSION

No insurance is provided by this policy for liability arising from the rendering of or failure to render any professional service including but not limited to Real Estate Managers, errors or omissions.

All other terms and conditions of this policy remain unchanged.

AG 0526 0702                                                                                    Page 1 of 1

LANDMARK 042

# ENDORSEMENT

This Endorsement, effective 01/31/2003 (12:01 a.m. standard time),
forms a part of Policy #        BMG-001157                          By: Landmark American Insurance Company

Issued to: R Y Management Co., Inc., Quaker Ridge Computer Corp., Travis Brokerage Corp.

## SCHEDULED LOCATION ENDORSEMENT
### (Restriction of Coverage)

It is agreed that such insurance as is afforded by this policy applies only to liability arising directly from the ownership, operation, maintenance, management, occupancy or use by the Insured of the physical premises scheduled below.

Each of the Insureds so designated below are insureds under this policy with respect to the property described under their name. Notices and correspondence mailed to the Named Insured at the address shown in the Declarations shall be deemed proper notice and correspondence to and on behalf of all insureds, including those shown below.

1.  Name of Insured:  RY Management Co., Inc.; Quaker Ridge Computer Corp.; Travis Brokerage Corp.
    Premises Located: Office-1619 Third Ave., New York, NY 10128

2.  Name of Insured:  Same as above
    Premises Located: Office-55 Richman Plaza, Bronx, NY 10453

3.  Name of Insured:  Same as above
    Premises Located: Office-50 Battery Place, New York, NY 10280

4.  Name of Insured:  Same as above
    Premises Located: Office-River Park Towers- 10,20,30, 40 Richman Plaza, Bronx, NY 10453

5.  Name of Insured:  Same as above
    Premises Located: Office- Ruppert/Yorkville- 1601-1641 Third Ave., New York, NY 10128

6.  Name of Insured:  Same as above
    Premises Located: Office-Linden Plaza- 675 Lincoln Ave., Brooklyn, NY 11208

7.  Name of Insured:  Same as above
    Premises Located: Office- South Cove Plaza- 50 Battery Place, New York, NY 10280

8.  Name of Insured:  Same as above
    Premises Located: Office- Concourse Village- 773 Concourse Village E., Bronx, NY 10451

9.  Name of Insured:  Same as above
    Premises Located: Office- Marcus Garvey Village-353 Chester St., (Dumont, Bristol & Riverdale Aves. Brooklyn, NY 11212

10. Name of Insured:  Same as above
    Premises Located: Office-Tracey Towers- 20/40 W. Mosholu Pkwy., Bronx, NY 10468

11. Name of Insured:  Same as above
    Premises Located: Office-Navy Yard Housing Development-45-55 N. Elliot Place, Brooklyn, NY 11205

12. Name of Insured:  Same as above
    Premises Located: Office-Grote Street (Twin Parks) 2311 Southern Blvd. & 760 E. 183rd St., Bronx, NY 10460

AG 0509 0702                                                      Page 1 of 2

LANDMARK  043

13.  Name of Insured:  Same as above
     Premises Located: Office- Oakwood Towers- 400 Oakwood Ave., Orange, NJ 07050

14.  Name of Insured:  Same as above
     Premises Located: Office- Willoughby Walk Corp.- 185 Hall St., Brooklyn, NY  11205

15.  Name of Insured:  Same as above
     Premises Located: Office- Ocean Park Apts., 125 Beach 19th St., Far Rockaway, NY 11691

16.  Name of Insured:  Same as above
     Premises Located: Office- Ocean Village-57-17 Shorefront Pkwy., Beach 56th, 59th Streets, Arverne, NY

G 0509 0702

Page 2 of 2

LANDMARK  044

# ENDORSEMENT

This Endorsement, effective 01/31/2003 (12:01 a.m. standard time),
forms a part of Policy # BMG-001157                          By: Landmark American Insurance Company

Issued to: R Y Management Co., Inc., Quaker Ridge Computer Corp., Travis Brokerage Corp.

### FINES, PENALTIES, PUNITIVE DAMAGES EXCLUSION

This insurance does not apply to liability for fines, penalties, punitive or exemplary damages, including treble damages or any other damages resulting from multiplication of compensatory damages.

All other terms and conditions of this policy remain unchanged.

AG 0517 0702                                                                     Page 1 of 1

LANDMARK  045

# ENDORSEMENT

This Endorsement, effective 01/31/2003 (12:01 a.m. standard time),
forms a part of Policy #          BMG-001157                      By: Landmark American Insurance Company

Issued to: R Y Management Co., Inc., Quaker Ridge Computer Corp., Travis Brokerage Corp.

### DESIGNATED OPERATIONS COVERAGE ONLY
### NOTICE OF SPECIAL RESTRICTION OF COVERAGE ENDORSEMENT

You, for all insureds, through your insurance broker or advisor has submitted an application and/or other written correspondence or documentation to us which has induced us to issue this policy of insurance. The Insureds may have other premises, operations, businesses, automobiles, risks or hazards which have not been revealed to us, intentionally or not.  Such exposures may be more hazardous, the same or less hazardous than that which has been set forth in such application, correspondence or documentation.

Only certain very specific liability exposures have been covered under this policy. We do not know, and have not been told, the criteria, nor the intent of the Insured in selecting either the exposures to be covered or to be excluded, if any.

You should read this endorsement, and the policy to which it is attached, carefully and consult with your insurance brokers and advisors.

I.    Subject to all of the exclusions, terms and conditions of this policy, such insurance as is afforded by this policy applies only to liability arising directly from the ownership, maintenance or use of the following by the Insured or the specific business operations by the Insured as described as follows:

      Offices occupied by the Insured-No coverage for operations or LRO

II.   No insurance is afforded by this policy for liability, directly or indirectly, arising from any exposure to loss described below:

      If not stated in I. above.

All other terms and conditions of this policy remain unchanged.

AG 0506 0702                                                                              Page 1 of 1

# ENDORSEMENT

This Endorsement, effective 01/31/2003 (12:01 a.m. standard time),
forms a part of Policy #          BMG-001157                          By: Landmark American Insurance Company

Issued to:  R Y Management Co., Inc., Quaker Ridge Computer Corp., Travis Brokerage Corp.

## <u>INDEPENDENT CONTRACTORS RESTRICTION</u>

This Section is added to SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS of the policy.

1.  It is a condition of this policy that you shall ensure that all independent contractors have, at the time they commence working under contract for you, insurance of the type provided by this policy in-force and the limits of liability for such insurance are equal to or greater than the limits of insurance provided by this policy; and,

2.  That such independent contractors have held you harmless under contract as respect liability arising from their negligence; and

3.  That the insured will obtain copies of a certificate of insurance from each independent contractor showing in-force insurance limits of liability as required in 1. above.

Also such insurance as is afforded by this policy shall be excess over the independent contractor's insurance as described in 1. above.

Nevertheless, this policy excludes all claims for "property damage", as defined in the Policy, to equipment of such independent contractors.

AG 0516 0702                                                                                        Page 1 of 1

LANDMARK  047

# ENDORSEMENT

This Endorsement, effective 01/31/2003 (12:01 a.m. standard time),
forms a part of Policy #        BMG-001157                                          By: Landmark American Insurance Company

Issued to:  R Y Management Co., Inc., Quaker Ridge Computer Corp., Travis Brokerage Corp.

### INSURED'S WARRANTY OF APPLICATION AND LOSS INFORMATION

You, through your insurance brokers, have provided information to us which has induced us to issue this insurance policy.  Included in the information provided is an application and other correspondence including your claim or loss history. This information is considered to be part of this policy.

You should review this information carefully as the truth of this information was of paramount importance in influencing our decision to issue this policy.

You, for all insureds under the policy, do warrant the truth of such information to the best of your and their knowledge AT THE EFFECTIVE DATE OF THIS POLICY. You declare that you and they know of no incident, occurrence, event, circumstance, or claim which has taken place or become known prior to the effective date of this policy which may render inaccurate, untrue, incomplete or misleading any information or statement made in the application or the information which was provided.

The Named Insured understands that if such information is now false or misleading it may cause denial of coverage under the policy.

AG 0518 0702                                                                          Page 1 of 1

LANDMARK 048

# ENDORSEMENT

This Endorsement, effective 01/31/2003 (12:01 a.m. standard time),
forms a part of Policy  # BMG-001157

By: Landmark American Insurance Company

Issued to:  R Y Management Co., Inc., Quaker Ridge Computer Corp., Travis Brokerage Corp

## MINIMUM PREMIUM-ABSOLUTE MINIMUM PREMIUM

The following is added to and made part of the provisions of SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS, Paragraph 5. "PREMIUM AUDIT":

d.  However, the provisions notwithstanding, in no event will the final premium retained by us be less than the minimum premium shown in the policy. IF NO OTHER PREMIUM IS DESIGNATED SPECIFICALLY AS A MINIMUM PREMIUM, THE ADVANCE PREMIUM SHOWN IN THE DECLARATIONS IS THE MINIMUM PREMIUM. Such minimum premium is subject to short rate or prorate adjustment according to policy provisions in case of cancellation of the policy.  In addition, this policy is also subject to an ABSOLUTE minimum earned premium of 25% of the minimum earned premium shown in the policy Such ABSOLUTE minimum premium is not subject to prorate or short rate adjustment in the event of cancellation by you and we shall retain no less than this ABSOLUTE minimum earned premium regardless of policy term. Cancellation of the policy for non-payment of  premium shall be deemed a request by you for cancellation of this policy thereby invoking the ABSOLUTE MINIMUM earned premium unless pro rata calculation earns more than the ABSOLUTE minimum earned premium.

The twenty-five percent (25%) absolute minimum earned premium described above may not be financed as it is not returnable.

AG 0519 0702

Page of 1

# ENDORSEMENT

This Endorsement, effective 1/31/2003  (12:01 a.m. standard time),
forms a part of Policy # BMG-001157                         By: Landmark American Insurance Company
Issued to: RY Management Co., Inc.; Quaker Ridge Computer Corp.; Travis Brokerage Corp.

## OTHER EXCLUSIONS

Notwithstanding anything to the contrary contained in this policy, or any coverage part attached hereto,
it is hereby understood and agreed that this policy also is subject to the following additional exclusions and
that this policy shall not apply to:

1. **FAILURE TO PERFORM:** Liability for the costs of removal, recovery, repair, alteration or replacement
   of any product (or any part thereof) which fails to perform the function for which it was manufactured,
   designed, sold, supplied, installed, repaired or altered by or on behalf of the Insured in the normal
   course of the Insured's operations.

2. **FAILURE TO SUPPLY:**  Any liability arising out of the Insured failure to supply or from fluctuations in
   supply of any gas, oil, electricity, chemicals, products, materials or services.

3. **CROSS LIABILITY EXCLUSION:**  Except as provided under the BLANKET ADDITIONAL INSUREDS
   ENDORSEMENT, if applicable, to liability arising from claims or "suits" brought by:

   a.  One insured against another insured.
   b.  Any parent company or parent corporation of any insured, or any subsidiary company or subsidiary
       corporation of any insured.
   c.  Any other company or corporation owned by any of the entities described in a. or b. above.
   d.  Any division or department of any of the entities described in a.,b., or c. above
   e.  Any officer, director or employee of any of the entities described in a.,b.,c, or d. above.

4. **WRONGFUL ACTS** including,

   a.  with regard to Employment Related Practices, claims of any kind arising out of: (a) refusal to
       employ; (b) termination of employment; (c) coercion, demotion, evaluation, reassignment, discipline,
       defamation, harassment, humiliation, discrimination or other employment-related practices, policies,
       acts or omission; or (d) consequential "bodily injury" or "personal injury" as a result of a. through
       c. above;

   b.  with regard to Discrimination, liability arising from alleged or real acts of discrimination by you
       whether such discrimination is based on age, health, illness, sex, sexual preference, disability, race,
       country of origin or religion. This insurance does not apply to, or provide, defense of "suits" or
       claims, loss costs, supplementary payments or claims or defense expense arising from any of the
       above;

   c.  with regard to Sexual Misconduct, liability arising out of or resulting from real or alleged acts of
       sexual abuse, sexual harassment, or licentious immoral or sexual behavior intended to lead to, or
       culminating in any sexual act, whether caused by, or at the instigation of, or at the direction of, or
       omission by, you, your employees, or patrons. This insurance does not apply to, or provide, defense
       of "suits" or claims, loss costs, supplementary payments, or claims and defense expenses arising
       from any of the above.

5. **INTELLECTUAL PROPERTY EXCLUSION:** The defense or indemnity of any claim, "suit", loss or expense
   which arise in connection with any actual or alleged infringement of intellectual property rights or
   violations of laws relating to patents; trademarks; trade dress; trade names; trade secrets and know-how.

AG 0520 0702                                                                              Page 1 of 1

# ENDORSEMENT

This Endorsement, effective 01/31/2003 (12:01 a.m. standard time),
forms a part of Policy # BMG-001157

By: Landmark American Insurance Company

Issued to: R Y Management Co., Inc., Quaker Ridge Computer Corp., Travis Brokerage Corp.

## SUBSIDENCE EXCLUSION

It is agreed that this policy does not apply to Property Damage directly or indirectly arising out of, caused by, resulting from, contributed to or aggravated by the subsidence, settling, mud flow, rising, tilting, or any other movement of land or earth; arising out of or attributable to any operations of the Insured.

All other terms and conditions of this policy remain unchanged.

\G 0524 0702

Page 1 of 1

*ERP Exclusion*

ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

<u>WAR OR TERRORISM EXCLUSION</u>

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. Exclusion **i.** under Paragraph **2.,** **Exclusions** of Section I- Coverage A- Bodily Injury And Property Damage Liability is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**i.   War or Terrorism**

"Bodily injury" or "property damage" arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war; or
**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or
**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these; or
**(4)** "Terrorism", including any action taken in hindering or defending against an actual or expected incident of "terrorism"

regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage.

However, with respect to "terrorism", this exclusion only applies if one or more of the following are attributable to an incident of "terrorism":

(1) The total of insured damage to all types of property exceeds $25,000,000.  In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property.  For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

(2) Fifty or more persons sustain death or serious physical injury.  For the purposes of this provision, serious physical injury means:

(a)    Physical injury that involves a substantial risk of death; or
(b)    Protracted and obvious physical disfigurement; or
(c)    Protracted loss of or impairment of the function of a bodily member or organ; or:

(3) The "terrorism" involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

(4) The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

(5) Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials.

CG 2169 0102                                                                                    Page 1 of 3

LANDMARK 052

Paragraphs (1) and (2), immediately preceding, describe the thresholds used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether the Terrorism Exclusion will apply to that incident. When the Terrorism Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Part.

In the event of any incident of "terrorism" that is not subject to the Terrorism Exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

Multiple incidents of "terrorism which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

B. The following exclusion is added to Paragraph 2., Exclusions of Section I- Coverage B- Personal and Advertising Injury Liability:

2. Exclusions

This insurance does not apply to:

War Or Terrorism

"Personal and advertising injury" arising, directly or indirectly, out of:

(1)    War, including undeclared or civil war; or

(2)    Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3)    Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in  hindering or defending against any of these; or

(4)    "Terrorism", including any action taken in hindering or defending against an actual or expected incident of "terrorism"

regardless of any other cause or event that contributes concurrently or in any sequence to the injury.

However, with respect to "terrorism" this exclusion only applies if one or more of the following are attributable to an incident of "terrorism":

(1)    The total of insured damage to all types of property exceeds $25,000,000.   In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property.  For the purpose of this  provision, insured damage means damage that is covered by any insurance plus damage that  would be covered by any insurance but for the application of any terrorism exclusions; or

(2)    Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

.(a)    Physical injury that involves a substantial risk of death; or

(b)    Protracted and obvious physical disfigurement; or

(c)    Protracted loss of or impairment of the function of a bodily member or organ; or

CG 2169 0102                                                                                          Page 2 of 3

LANDMARK 053

(3)   The "terrorism" involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

(4)   The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

(5)   Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials.

Paragraphs (1) and (2), immediately preceding, describe the thresholds used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether the Terrorism Exclusion will apply to that incident. When the Terrorism Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Part.

In the event of any incident of "terrorism" that is not subject to the Terrorism Exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

Multiple incidents of "terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

C.  Exclusion h. under Paragraph 2., Exclusions of Section I- Coverage C- Medical Payments does not apply.

D.  The following definition is added to the Definitions Section:

"Terrorism" means activities against persons, organizations or property of any nature:

1.  That involve the following or preparation for the following:

    a.   Use or threat of force or violence; or

    b.   Commission or threat of a dangerous act; or

    c.   Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

2.  When one or both of the following applies:

    a.   The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

    b.   It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

All other terms and conditions of this policy remain unchanged.
CG 21 69 01 02

LANDMARK 054

Policy Number:  BMG-001157                                    CG 20 18 11 85

# ADDITIONAL INSURED - MORTGAGEE, ASSIGNEE, OR RECEIVER

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

**Name of Person or Organization:**   Any person or organization to whom or for which the insured is obligated by written contract to name as an additional insured.

**Designation of Premises:**  See Scheduled Locations Endorsement AG 0509 0702.

(If no entry appears above, the information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

1.  WHO IS AN INSURED (Section II) is amended to include as an insured the person(s) or organization(s) shown in the Schedule but only with respect their liability as mortgagee, assignee, or receiver and arising out of the ownership, maintenance, or use of the premises by you and shown in the Schedule.

2.  This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

Copyright, Insurance Services Office, Inc.  1984

LANDMARK  055

# ENDORSEMENT

This Endorsement, effective 01/31/2003 (12:01 a.m. standard time)
forms a part of Policy # BMG-001157                                    By: Landmark American Insurance Company

Issued To: R Y Management Co., Inc., Quaker Ridge Computer Corp., Travis Brokerage Corp.

## MOLD AND FUNGI EXCLUSION CLAUSE

Notwithstanding any other provision in this policy, this insurance does not apply to the following:

(1) Any sums which any Insured becomes legally obligated to pay as damages because of Bodily Injury, Property Damage, Personal Injury, Advertising Injury or Medical Payments directly or indirectly relating to the actual, potential, alleged or threatened presence of mold, mildew or fungi of any kind whatsoever, or any materials containing them at any time.

(2) Any loss, cost or expense:

(a)  any Insured or any other person or organization may incur in testing for, monitoring, removing, treating or in any way responding to the actual, potential, alleged or threatened presence of mold, mildew or fungi of any kind whatsoever, or any materials containing them, whether as a result of a request, demand, statutory or regulatory requirement or otherwise; or

(b)  any Insured or any other person or organization may incur in connection with any claim or "suit" on behalf of any governmental authority or any person or organization relating to the actual, potential, alleged or threatened presence of mold, mildew or fungi of any kind whatsoever, or any materials containing them.

(3) The Company will have no duty or obligation to defend any Insured with respect to any claim or "suit" seeking any such damages.

All other terms and conditions of this policy remain unchanged.

AG 0544 0702

Page 1 of 1

# ENDORSEMENT

This Endorsement, effective 01/31/2003 (12:01 a.m. standard time)
forms a part of Policy # BMG-001157                                   By: Landmark American Insurance Company

Issued To: R Y Management Co., Inc., Quaker Ridge Computer Corp., Travis Brokerage Corp.

## RADON EXCLUSION CLAUSE

Notwithstanding any other provision in this policy, this insurance does not apply to the following:

(1) Any sums which any Insured becomes legally obligated to pay as damages because of **Bodily Injury, Property Damage,**
Personal Injury, Advertising Injury or Medical Payments directly or indirectly relating to the actual, potential, alleged
or threatened presence of radon of any kind whatsoever, or any materials **containing it at any time.**

(2) Any loss, cost or expense:

    (a)   any Insured or any other person or organization may incur in testing for, monitoring, removing, treating or
in any way responding to the actual, potential, alleged or threatened presence of radon of any kind
whatsoever, or any materials containing it, whether as a result of a request, demand, statutory or regulatory
requirement or otherwise; or

    (b)   any Insured or any other person or organization may incur in connection with any claim or "suit" on behalf
of any governmental authority or any person or organization relating to the actual, potential, alleged or
threatened presence of radon of any kind whatsoever, or any materials containing it.

(3) The Company will have no duty or obligation to defend any Insured with respect to any claim or "suit" seeking any
such damages.

All other terms and conditions of this policy remain unchanged.
AG 0625 0702

Page 1 of 1

LANDMARK 057

# ENDORSEMENT

This Endorsement, effective 01/31/2003 (12:01 a.m. standard time),
forms a part of Policy #          BMG-001157                         By: Landmark American Insurance Company

Issued to: R Y Management Co., Inc., Quaker Ridge Computer Corp., Travis Brokerage Corp.

### LEAD PAINT EXCLUSION

In consideration of the premium charged, it hereby understood and agreed that no coverage is afforded under this policy for any claims  or losses arising out of the exposure, removal, ingestion or application of any paints or pigments containing lead.

\ll other terms and conditions of this policy remain unchanged.

G 0523 0702                                                                    Page 1 of 1

# ENDORSEMENT

This Endorsement, effective 01/31/2003 (12:01 a.m. standard time),
forms a part of Policy # BMG-001157

By: Landmark American Insurance Company

Issued to: R Y Management Co., Inc., Quaker Ridge Computer Corp., Travis Brokerage Corp.

### "ASBESTOS" EXCLUSION

1. This insurance does not apply to "Asbestos Liability". This policy does not cover any obligation on your part to indemnify any party for "Asbestos Liability"; nor, to any Asbestos Liability assumed under contract.

2. Coverage for SUPPLEMENTARY PAYMENTS, claims or defense expenses, if any, as defined in this policy, does not apply to any loss, claim or "suit" directly or indirectly resulting from, caused by or alleged to be caused by "Asbestos" or "Asbestos Liability".

   Any obligation or duty on our part to investigate or defend claims or "suits", if any, does not apply to any loss, claim or "suit" directly or indirectly resulting from, caused by or alleged to be caused by "Asbestos" or "Asbestos Liability".

3. If a loss, claim, or "suit" arises which alleges that "Asbestos Liability" is one of two or more causes of a loss:

   a. We shall have no obligation to participate in or to assume charge of the investigation, defense, or settlement of such loss, claim, or "suit" brought against you, but we shall have the right and be given the opportunity to associate with you and your defense counsel in defense and control of any such claims, loss or"suit". We, at our sole discretion, may elect to assume control and defense of any or all such claims, losses or "suits" which, in our opinion, may involve this policy under coverages or hazards that are not otherwise excluded.

   b. Unless we elect otherwise, you shall be solely responsible for the investigation, defense, settlement, and final disposition of any such loss, claim made, or "suit" brought against you. You must use due diligence and prudence to settle all such losses, claims and "suits" which, in the exercise of sound judgement, should be settled; provided however, that you shall not make or agree to any settlement for any sum, which would involve this insurance without our prior written approval.

   c. If such loss, claim or "suit" results in a judgement or settlement based solely on ASBESTOS LIABILITY, then no loss, damages, claims expense or supplementary payment shall be payable by us.

   d. If such loss, claim or "suit" results in a final judgement or settlement based in part upon loss otherwise covered by this policy, we shall reimburse you for that portion of the loss which is otherwise covered by this policy.

   e. If this policy also provides defense and/or coverage for supplementary payments and/or claims expenses, subject to all the terms, conditions and provisions applicable to such coverage, we will also reimburse you for the portion of supplementary payments and/or claims expenses which is allocated to that portion of the loss which is otherwise covered by this policy. Such allocation shall be in the same proportion that our payment for covered loss under the policy bears to the total final settlement or judgement. This agreement is subject to any provision in this policy which includes supplementary payments and claims costs within the limit of liability, if any.

   f. If the final settlement or judgement does not specify the sums attributable to each of the various causes of the loss and if we and you cannot agree on an allocation for purposes of loss, defense costs, supplementary payments and claims expense reimbursement, the dispute will be submitted to Binding Arbitration as described elsewhere in this policy.

LANDMARK 059

g.  If this policy applies subject to a deductible or self-insured retention or if this policy applies as excess insurance over other or underlying insurance, such insurance as is of afforded by this policy shall apply as if such deductible, self-insured retention, other insurance or underlying insurance did not include loss caused by ASBESTOS LIABILITY.

**"Asbestos" and related phrases added as definitions**

"Asbestos" includes, but is not limited to, Asbestos, Asbestos Products, Asbestos Fibers, Asbestos Particles, Asbestos Dust, or any product or goods containing Asbestos in any form.

"Asbestos Liability" means any liability arising directly or indirectly from loss, injury or damage caused by the handling, use, misuse or existence of Asbestos.

"Loss, Injury or Damage" includes but is not limited to 1) Bodily injury, sickness, disease, occupational disease, death, shock, disability, mental anguish, mental injury, emotional upset, asbestosis, any trauma, suffered or alleged to be suffered by any person or entity; 2) Damage to tangible or intangible property; 3) Loss of, or loss of use of tangible or intangible property; 4) Loss of, loss of use of or interference with property rights.

"Handling, Use, Misuse or Existence" includes, but is not limited, to the manufacture, mining, use, sale, installation, distribution, removal, encapsulation, transportation, or presence of "Asbestos". It includes the failure to perform, or inadequate performance in said "Handling, Use, Misuse or Existence".

LANDMARK 060

# ENDORSEMENT

This Endorsement, effective 01/31/2003 (12:01 a.m. standard time),
forms a part of Policy #     BMG-001157       By: Landmark American Insurance Company

Issued to:  R Y Management Co., Inc., Quaker Ridge Computer Corp., Travis Brokerage Corp.

## ABSOLUTE POLLUTION AND CONTAMINATION EXCLUSION

All policy provisions which limit, delete or exclude coverage for  liability arising out of, resulting from or in any way related to  pollution or contamination are hereby deleted in their entirety.

Notwithstanding any other provisions of any coverage part or form to the contrary, this insurance does not apply to:

"Bodily Injury" "personal injury" or "property damage" (actual, alleged, or threatened) arising out of the discharge, dispersal, release, or escape of smoke, vapors, soot, fumes, acids, alkalis, oil or other petroleum substance, toxic substances or chemicals, waste materials or other irritants, contaminants or pollutants whether solids, liquids or gases, into or upon land, the atmosphere or any watercourse or body of water.

Further, this policy does not apply to any loss, cost, defense or expense arising out of any governmental direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize such irritants,contaminants or pollutants referred to above.

For purposes of this exclusion only, the term "Waste Materials" includes (but is not limited to) materials to be recycled, reconditioned or reclaimed.  Also, oil means oil of any kind, ordinary form, including but not limited to crude oil, petroleum, fuel oil, sludge, oil refuse, and oil mixed into any wastes or other substances

AG 0659 0702

LANDMARK 061

# ENDORSEMENT

This Endorsement, effective 01/31/2003 (12:01 a.m. standard time),
forms a part of Policy # BMG-001157                                   By: Landmark American Insurance Company

Issued to:  R Y Management Co., Inc., Quaker Ridge Computer Corp., Travis Brokerage Corp.

### "BODILY INJURY" TO EMPLOYEES

The last paragraph of SECTION I - COVERAGES, paragraph **2.** Exclusions, subparagraph **e. Employer's Liability** of the COMMERCIAL GENERAL LIABILITY Coverage Form is hereby amended to read:

This exclusion also applies to "temporary workers" and "employees" of subcontractors as well as liability assumed by the insured under an "insured contract".

LANDMARK  062

# ENDORSEMENT

This Endorsement, effective 01/31/2003 (12:01 a.m. standard time),
forms a part of Policy # BMG-001157

By: Landmark American Insurance Company

Issued to:  R Y Management Co., Inc., Quaker Ridge Computer Corp., Travis Brokerage Corp.

### EMPLOYEE BENEFITS EXCLUSION

Notwithstanding anything to the contrary contained in this policy. or any coverages part attached hereto, it is hereby understood and agreed that this policy shall not apply to liability arising out of any act, error, omission or failure to perform of the Insured, or any other person or entity for whose acts or omissions the Insured is legally liable, in respect of the Insured's Employee Benefits or similar employee benefits.

As used in this exclusion, the term "Employee Benefits" includes, without limitation, Group Life Insurance, Group Health Insurance, Profit-Sharing Plans, Pension Plans, Employee Stock Subscription Plans, Workers' Compensation, Unemployment Insurance, Social Security, Disability Benefits Insurance and the administration or implementation of Employee Retirement Income Security Act and any other similar federal, state or other statues, rules or regulations.

LANDMARK 063

# ENDORSEMENT

This Endorsement, effective 1/31/2003 (12:01 a.m. standard time),
forms a part of Policy # BMG-001157

By: Landmark American Insurance Co.

Issued to: RY Management Co., Inc.; Quaker Ridge Computer Corp.; Travis Brokerage Corp.

## NON-MONEY DAMAGES EXCLUSION

No insurance is afforded for liability arising from any claim seeking relief or redress in any form other than money damages.

All other terms and conditions of this policy remain unchanged.

AG 0715 0702

Page 1 of 1

LANDMARK 064

# ENDORSEMENT

This Endorsement, effective 1/31/2003 (12:01 a.m. standard time),
forms a part of Policy # BMG-001157                                    By: Landmark American Insurance Co.

Issued to:  RY Management Co., Inc.; Quaker Ridge Computer Corp.; Travis Brokerage Corp.

## RESIDENTIAL CONSTRUCTION EXCLUSION

In consideration of the premium charged, it is understood and agreed that the insurance provided by this policy specifically excludes any liability arising out of any construction activities for residential properties, including but not limited to condominiums, townhouses, co-operatives and or single family or multi family dwellings which are constructed with the intent to sell to others.

AG 0522 0702

# ENDORSEMENT

This Endorsement, effective 1/31/2003 (12:01 a.m. standard time),
forms a part of Policy # BMG-001157

By: Landmark American Insurance Co.

Issued to: RY Management Co., Inc.; Quaker Ridge Computer Corp.; Travis Brokerage Corp.

## ASSAULT AND BATTERY EXCLUSION

Notwithstanding anything contained herein to the contrary, it is understood and agreed that this policy does not cover Bodily Injury or Property Damage arising out of an assault or battery, provoked or unprovoked, whether caused by or at the instigation of or at the direction of the insured, his employees, patrons or from any cause whatsoever.

All other terms and conditions of this policy remain unchanged.

LG 0532 0702

Page 1 of 1

LANDMARK 066

CG 21 04 11 85

# EXCLUSION-PRODUCTS-COMPLETED OPERATIONS HAZARD

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to "bodily injury" or "property damage" included within the "products-completed operations hazard".

Copyright, Insurance Services Office, Inc. 1984

LANDMARK 067

CL 275
(11-85)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

GC 21 38 11 85

**EXCLUSION-PERSONAL AND ADVERTISING INJURY**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

COVERAGE B (Section I) does not apply and none of the references to it in the Coverage Part apply.

Copyright, Insurance Services Office, Inc., 1992

LANDMARK 068

# ENDORSEMENT

This Endorsement, effective 1/31/2003   (12:01 a.m. standard time),
forms a part of Policy #  BMG-001157                    By:  Landmark American Insurance Company

Issued to: RY Management Co., Inc., Quaker Ridge Computer Corp.; Travis Brokerage Corp

## PRE-EXISTING DAMAGE EXCLUSION

This insurance does not apply to:

1.  Any loss or claim for damages related to "bodily injury" or "property damage" whether known or unknown:

    a.  Which first occurred prior to the inception date of this policy (or the retroactive date of this policy, if any, whichever is earlier); or

    b.  Which is, or is alleged to be, in the process of occurring as of the inception date of this policy (or the retroactive date of this policy, if any, whichever is earlier).

2.  Any loss or claim for damages arising out of or related to "bodily injury" or "property damage", whether known or unknown, which is in the process of settlement, adjustment or "suit" as of the inception date of this policy (or the retroactive date of this policy, if any, whichever is earlier).

We will have no duty to defend any insured against any loss, claim, "suit" or other proceeding alleging damages arising out of or related to "bodily injury" or "property damage" to which this endorsement applies.

All other terms and conditions of this policy remain unchanged.

AG 0521 0702                                                    Page 1 of 1

LANDMARK  069

CL 272
(11-85)

POLICY NUMBER: BMG-001157

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

CG 21 35 10 01

## EXCLUSION - COVERAGE C - MEDICAL PAYMENTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

SCHEDULE

Description and Location of Premises:

All locations of the Insured

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to any premises or classification shown in the Schedule:

1. Section I- Coverage C- Medical Payments does not apply and none of the references to it in the Coverage Part apply: and

2. The following is added to Section I- SUPPLEMENTARY PAYMENTS:

h. Expenses incurred by the insured for first aid administered to others at the time of an accident for "bodily injury" to which this insurance applies.

Copyright, Insurance Services office, Inc. 2000

LANDMARK 070

This endorsement, effective 12:01 AM on 1/31/2003, forms a part of Policy Number: BMG-001157 issued to: RY Management Co., Inc.; Quaker Ridge Computer Corp.; Travis Brokerage Corp.

THIS ENDORSEMENT CHANGES THE POLICY.
PLEASE READ IT CAREFULLY.

### SERVICE OF SUIT ENDORSEMENT

It is agreed that service of process in suit may be made upon:

CT Corporation System
1633 Broadway, New York, NY 10019

and that in any suit instituted against any one of them upon this contract, The Company, will abide by the final decision of any court or Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of the Company in any suit and/or upon the request of the Insured to give a written undertaking to the Insured that they will enter a general appearance upon the Company's behalf in the event a suit is instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, the Company designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

OI 1200-0 (3-99)

INTERLINE
IL 01 85 04 98

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NEW YORK CHANGES – CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL CRIME COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY – NEW YORK

A. For policies with fixed terms in excess of one year, or policies with no stated expiration date, except as provided in paragraph B., the following applies:

The premium shown in the Declarations was computed based on rates and rules in effect at the time the policy was issued. On each renewal or continuation of this policy, we will compute the premium in accordance with our rates and rules then in effect.

B. For policies with fixed terms in excess of one year, where premium is computed and paid annually, the following applies:

1. The premium shown in the Declarations was computed based on rates and rules in effect at the time the policy was issued. Such rates and rules will be used to calculate the premium at each anniversary, for the entire term of the policy, unless the specific reasons described in paragraphs 2. or 3. apply.

2. The premium will be computed based on the rates and rules in effect on the anniversary date of the policy only when, subsequent to the inception of the current policy period, one or more of the following occurs:

   a. After issuance of the policy or after the last renewal date, discovery of an act or omission, or a violation of any policy condition, that substantially and materially increases the hazard insured against, and that occurred subsequent to inception of the current policy period;

   b. A material physical change in the property insured, occurring after issuance or last anniversary renewal date of the policy, causes the property to become uninsurable in accordance with underwriting standards in effect at the time the policy was issued or last renewed; or

   c. A material change in the nature or extent of the risk, occurring after issuance or last anniversary renewal date of the policy, which causes the risk of "loss" to be substantially and materially increased beyond that contemplated at the time the policy was issued or last renewed.

3. If, subsequent to the inception of the current policy period, the Limit of Insurance is increased, or Additional Coverages or Causes of Loss are insured, the rate and rules in effect at the time of the change will be applied to calculate the premium and will continue to apply to the change at subsequent anniversary dates.

Copyright, Insurance Services Office, Inc., 1997

LANDMARK 072

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CHANGES IN POLICY

This endorsement changes the policy effective on the date indicated below.

| | |
|---|---|
| Policy Number:  BMG-001157 | Endorsement Number: 1 |
| Endorsement Effective: 1/31/2003 | Company:  Landmark American Insurance Co. |
| Named Insured:  RY Management Co., Inc. | Countersigned By: |

Agency Code: 91-3237

(Authorized Representative)

COVERAGE PARTS AFFECTED:

COMMERCIAL GENERAL LIABILITY  COVERAGE FORM

It is warranted that at all times throughout the policy period the insured maintains separate insurance to cover his professional exposures as well as the operations of the insured with policies containing at least $1,000,000/$2,000,000 limits of liability.

All other terms and conditions remain unchanged.

AG 0730 0702

LANDMARK  073